ATTORNEY-GENERAL *ex rel.* JOHN F. ADAMS *et al. vs.*
BERNARD McCAUGHEY *et al.*

PROVIDENCE—JUNE 10, 1899.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Public Officers.   Quo Warranto.*

Commissioners appointed under the provisions of Gen. Laws R. I. cap. 71,
§ 2, to lay out a highway are not public officers, and a writ of *quo war-
ranto* is not available to determine their title to the office.

INFORMATION praying for a writ of *quo warranto.* The
facts are stated in full in the opinion.   Prayer denied.

TILLINGHAST, J.   This is an information filed by the attor-
ney-general upon the relation of John F. Adams and others,
electors and tax-payers of the city of Pawtucket, praying for
a writ of *quo warranto* against Bernard McCaughey, John
E. Judson, and Walter H. Johnson, who, it alleges, on the
seventh day of December, 1898, were appointed by the board
of aldermen of said city, commissioners to lay out a highway
under the provisions of chapter 71, Gen. Laws R. I.   The
ground of the information is that, under the provisions of
Pub. Laws R. I. cap. 474, § 3, passed March 27, 1885, the
resolution appointing the respondents commissioners on the
layout of Henry street was an order involving the expendi-
ture of money ; that it was presented to the mayor of said
city for his approval, in accordance with the provisions of
the charter, and was by him, within the time fixed by law,
returned to said board with his veto attached thereto.   The
relators therefore contend that said resolution never became
a law and that the appointment of said commissioners, which
was one of the incidents of said resolution, also failed.   The
information further sets out that, notwithstanding the veto
of said resolution by the mayor, the board of aldermen or-
dered the clerk thereof to issue to said respondents a com-
mission under said resolution ; that said clerk did issue the
same, and thereupon said commissioners organized with said

Bernard McCaughey as chairman and said John E. Judson as secretary, and that they have entered upon the duties of said office and are preparing to have plans of said layout made, and are incurring great expense and putting said city and the citizens thereof to great expense by reason of the bills incurred by them in their said capacity, and that they still claim to be commissioners on the layout of said Henry street, against the form of the statute in such case made and provided, and against the peace and dignity of the State. Wherefore the relators pray the consideration of the court in the premises and that due process of law may be awarded against the respondents and that they may be required to show by what authority they hold and exercise the privileges and powers of commissioners on the layout of said street, and also that they may be excluded and ousted from said office and from further holding and exercising the same.    To this information the respondents have demurred.    In support of the demurrer it is contended that clause 6 of section 3 of the charter does not apply to the action of the board of aldermen in appointing commissioners to lay out a highway, said appointment not being an order but an election.    Said clause is as follows : "Every ordinance, order, resolution, or vote to which the concurrence of the common council and the board of aldermen shall be necessary, except on a question of adjournment, or of a convention of the two boards, and also every order of either branch involving an expenditure of money shall be presented to the mayor.    If he approve he shall sign it, and it shall then be in force as a law ; but if he do not approve it he shall return it to the board in which it originated before the next meeting thereof held more than ten days after it shall have been presented to him, with his objections thereto, which shall be entered on the records of said board (provided that the mayor may approve a part of such vote, and refuse to approve the rest, and the part so approved shall be in force as a law); and if it, or so much thereof not approved by the mayor, shall then pass such board by a majority of two-thirds of all the members elected thereto, thereupon, if it require concurrent action, it shall be

sent, together with objections, to the other board, where, if it
be approved by a like majority, it shall be in force as a law ;
and in all cases such votes shall be taken by yeas and nays
and recorded.   And no such vote shall be taken on the same
day that the mayor's objections are read in the board to which
they are sent by him."

As we view the case, it does not become necessary for us
to determine as to the proper construction to be put upon
this provision of the charter.   The reason for our conclusion
is that we do not think·the relators state a case for the writ
of *quo warranto* to issue.

(1)     *Quo warranto* is the appropriate remedy to oust one who
usurps the functions of a public office, under a claim of title,
without legal right.    Spelling's Extraordinary Relief, § 1776.
The first question which naturally presents itself, therefore,
is whether the respondents are usurping any such functions.
We do not think they are.   Commissioners appointed to lay
out a highway under said statute are not public officers.    In-
deed, the statute does not even dignify them with the title of
"commissioners."   It provides that "For the due marking
out of any highway the town council shall appoint *three
suitable and indifferent men*, not interested or concerned in
the land through which such highway is to pass, who shall
be engaged to the faithful discharge of their trust."   Gen.
Laws R. I. cap. 71, § 2.   In sections 11 and 13 of said chap-
ter they are denominated a "committee."

"A public office is the right, authority, and duty created
and conferred by law, by which, for a given period, either
fixed by law or enduring at the pleasure of the creating
power, an individual is invested with some portion of the
sovereign function of the government, to be exercised by him
for the benefit of the public.   The individual so invested is a
public officer."   Mechem on Public Officers, § 1.

In *State* v. *Stanley*, 66 N. C. 59, Pearson, C. J., says :
"A public office is an agency for the state, and the person
whose duty it is to perform this agency is a public officer.
This we consider to be the true definition of a public officer
in its original broad sense.   The essence of it is the duty of

performing an agency—that is, of doing some act or acts or series of acts for the State." See also *Opinion of Judges*, 3 Greenl. (Me.) 481 ; High Ex. Le. Rem. §§ 625–6.

A public office differs materially from a public employ-ment, for, as was said by Chief Justice Marshall, in *United States* v. *Maurice*, 2 of Brock. C. C. 96, "Although an office is an employment, it does not follow that every employment is an office. A man may certainly be employed under a con-tract, express or implied, to perform a service without be-coming an officer."

A civil office, as defined by Holmes, J., in *State ex rel. Atty. Gen.* v. *Vallé*, 41 Mo. 29, cited by counsel for relators, "is a grant and possession of the sovereign power. And the exercise of such power, within the limits prescribed by the law which creates the office, constitutes the discharge of the duties of the office ; and it. is distinguished in this respect from a mere employment as a contractor or agent under some public office."

The same doctrine was clearly recognized by this court in *State* v. *Brown*, 5 R. I., where, in speaking of the writ of *quo warranto*, on page 7, Ames, C. J., says: "It lies for usurping any office, whether created by charter of the crown alone, or by the crown with the consent of parliament, *pro-vided the office be of a public nature, and a substantive office, and not merely the function or employment of a dep-uty or servant held at the will or pleasure of others.*" See also *In re Corliss*, 11 R. I. 638.

Mr. Spelling, in his work on Extraordinary Relief (see § 1780), says : "There are three principal tests for determin-ing whether one performing duties of a public nature is a public officer, in the sense of subjecting his incumbency or employment to a *quo warranto* proceeding : First, whether the sovereignty, either directly through legislative enactment or executive appointment, or indirectly as through a munici-pal charter, is the source of authority ; second, whether the duties pertaining to the position are of a public character— that is, due to the community in its political capacity— and third, whether the tenure is fixed and permanent for a

definite period fixed by law, unless for neglect of duty or malfeasance, or subject to termination at the will of others without the assignment of cause."

With these tests in mind, we will briefly consider a few of the cases bearing upon the question. In *Attorney-General ex rel. Hart* v. *Cain*, 84 Mich. 223, it was held that the office of policeman, the incumbent of which is subject to the orders and direction of the common council of a city, and to removal at their discretion, did not rise to the dignity of being entitled to the notice of the attorney-general by *quo warranto* proceedings. We do not wish to be understood, however, as intimating by this citation that such proceedings would not lie in this State, as policemen are expressly recognized by our statute as being public officers.

In *Portman* v. *Commissioners*, 50 Mich. 258, it was held that the superintendent of fisheries of the State was not an "officer" within the meaning of the constitution and laws of that State. This opinion was founded upon the fact that he was subject to the orders and directions of the board of fish commissioners, and removable at their pleasure.

In *Eliason v. Coleman*, 86 N. C. 235, it was held that the office of chief engineer of the Western North Carolina Railroad was not a public office; that the act which authorized the attorney-general to bring an action in the name of the people against one who was unlawfully holding or exercising any public office is confined to an office which is a part of the government and part of the State polity, and to an officer who takes part in the government.

In *Dean* v. *Healy*, 66 Ga. 503, it was held that licensed pilots are not public officers so as to be subject to writs of *quo warranto.* "A pilot," said the court, "is one who steers a ship or vessel—a guide, and in no sense exercises or discharges the functions of a public office. No portion of the sovereignty of the country attaches to his position or duty. It is neither legislative, executive nor judicial, and does not therefore fall legitimately within the scope of a *quo warranto* information as to public officers."

*In the Matter of Attorneys, &c.*, 20 Johns, 492, it was

held that an attorney or counselor of the court does not hold a public office. Platt, J., says : " Lexicographers generally define ' office ' to mean ' public employment ; ' and I apprehend its legal meaning to be an employment on behalf of the government in any station of public trust, not merely transient, occasional or incidental." See also *In the Matter of Hathaway*, 71 N. Y. 238 ; *Sheboygan Co.* v. *Parker*, 3 Wall. 93 ; *Lindsey* v. *Atty. Gen.*, 33 Miss. 508.

In *Fairbanks* v. *Mann*, 19 R. I. 499, this court held that an appraiser, appointed under Gen. Laws R. I. cap. 214, § 2, is not an officer of the Probate Court.

The cases cited by counsel for relators, bearing upon the question of what constitutes a public office, are all in practical harmony with the view we have taken. We will briefly refer to a few of them.

*Vaughn* v. *English*, 8 Cal. 39, holds that the clerks allowed by law in the offices of the secretary of state, comptroller, and treasurer are officers. The act under which the respondent in that case was appointed expressly recognized the position as that of an officer. He was appointed by the government, the duties he was required to perform concerned the public, he had a definite tenure of office, and he was paid a salary out of the public treasury. The court, in referring to the act of the legislature in question, said : " The act is entitled ' An act to reduce and fix the salaries of officers and members of the legislature ; ' and the clerks of the different departments are included in the list of officers whose salaries are fixed by the act."

*Bradford, relator,* v. *Justices*, 33 Ga. 332, holds that a county treasurer is a public officer. The case shows that the laws of that State provide for the election of such an officer by the people and that he exercises independent functions concerning the public, assigned to him by law.

*Shelby* v. *Alcorn*, 36 Miss. 273, holds that a levee commissioner is a public officer. The case shows that said office is one created by statute ; that the tenure thereof is two years ; that he is required to give bond ; that he receives and dis-

burses public funds, and that the act under which he is appointed expressly recognizes him as a public officer.

*People* v. *Nostrand*, 46 N. Y. 375, holds that commissioners authorized by chapter 905, Laws of 1869 (authorizing the construction of a highway in certain towns), as amended by chapter 750, laws of 1870, are public officers. By virtue of said acts the commissioners were authorized to exercise a portion of the functions of government. They had the power of taking private property for public use by right of eminent domain, and also to expend a large amount of money in the construction of a public improvement. In short, they possessed every attribute and characteristic of public officers. The vital difference between that case and the one before us, therefore, is so apparent that comment is unnecessary.

*Gray* v. *Granger*, 17 R. I. 201, holds that the city engineer of the city of Providence is a public officer. There can be no doubt of the correctness of the decision. His election was authorized by a statute which expressly styles him an officer, he was elected by the city council in joint convention, pursuant to an ordinance of the city, and he was specially charged with the performance of public duties.

The other cases cited are similar in principle, the persons held to be public officers being expressly recognized as such by statute and being also clothed with some portion of the sovereign functions of government.

The persons appointed to mark out a highway, under the statute of this State, are the mere statutory servants and agents of the board of aldermen. The statute directs them to "proceed to survey, bound, and mark out a highway *conformably to the direction of the town council.*" If the layout is in a city, as in this case, they are to proceed according to the direction of the board of aldermen. The persons thus appointed have no independent powers, nor are they invested with any portion of the sovereign function of the government. All of their doings have to be approved and confirmed by the board which appoints them before they can have any binding effect (Gen. Laws R. I. cap. 71, §§ 3–7); they hold their position during the pleasure of the board

which appoints them, and the duties which they perform are not of a public character—that is, such as are due to the community in its political capacity—but simply such as pertain to making the preliminary details looking to the establishment of a public highway. In other words, their duties are merely subordinate and provisional, and not authoritative and final, in their character (*In re Corliss, supra*), and hence in no proper sense can they be called public officers. It may be further observed that in case the board shall approve and confirm the report of the committee, and thereby establish the highway which is laid out, any person through whose land the same is laid has the right of appeal from such action to the Common Pleas Division, where a jury may be called upon to determine both as to the necessity of the layout and also as to the damages sustained by the appellant. *Hunter* v. *Mayor, &c.,* 5 R. I. 325 ; *Hazard* v. *Middletown,* 12 R. I. 227.

Still further, the land necessary for said layout cannot be actually taken and the highway prepared for public travel until an appropriation for the payment of said land and the cost of building the highway shall have been made by the city council. So that it would seem that all necessary safeguards to prevent haste and improvident action in the premises are provided for. At any rate, we do not think the proceeding instituted is available in the premises, for the reasons above given.

The prayer for the writ of *quo warranto* is denied.

*Bassett & Mitchell,* for relators.

*James L. Jenks, City Solicitor,* for respondents.