[No. 1539. Decided March 20, 1895.]

HENRY NELSON, *Appellant*, v. JOHN W. TROY, *Auditor
of Clallam County, Washington, et al., Respondents.*

CONSTITUTIONAL LAW—COUNTY OFFICERS—EMPLOYMENT OF DEPUTIES—
DELEGATION OF LEGISLATIVE POWERS—INCREASE OF COMPENSATION
—UNIFORMITY OF OPERATION.

The limitations imposed by art. 11, § 5 of the constitution upon
the legislative authority in respect to prescribing the duties, fixing
the terms of office, and regulating the compensation of certain county
officers, are confined only to the officers of the county as distin-
guished from mere clerks or deputies.

Sec. 2 of the act of March 26, 1890 (Laws 1889-90, p. 304), giving
the county commissioners the power to authorize the employment
of necessary help in all cases where the duties of any office are
greater than can be performed by the person elected to fill the same,
is not unconstitutional as being a delegation of legislative power,
but is a matter of local regulation, administrative in character, which
may be properly delegated to the county commissioners.

The allowance of a deputy to a county officer at the charge of the
county is not a violation of the constitutional prohibition against in-
creasing the compensation of an officer during his term of office,
when, at the time of such officer's induction into office, there was a
valid statute in force authorizing the employment of additional help
when necessary.

Laws 1889-90, p. 304, § 2, is not open to the objection that its
effect is to destroy the uniformity of operation of the law, since it is
a general provision, applicable to all classes of counties, the exercise
of the power imposed upon the commissioners depending upon the
condition of the public business in a given county.

*Appeal from Superior Court, Clallam County.*

*Benton Embree,* for appellant.

*John W. Troy* and *A. A. Richardson, pro se.*

The opinion of the court was delivered by

GORDON, J.—This proceeding was instituted by the appellant, in the superior court of Clallam county, for the purpose of restraining the county auditor from issuing a warrant upon the county treasurer for the payment of services of the deputy county clerk of said county. The respondent Richardson, the clerk of said county, was permitted by the court to intervene in the action. The lower court sustained the auditor's demurrer to the complaint, and, the appellant having elected to stand on his complaint, judgment was rendered dismissing the cause, from which judgment this appeal is taken.

It appears from the complaint — (1) that the appellant is a resident and taxpayer of Clallam county; (2) that said county is, by legislative classification, a county of the twenty-third class, and the salary fixed and allowed by law to be paid to the county clerk of said county is one thousand dollars per annum; (3) that on February 6, 1893, and subsequent to the election and qualification of the county clerk, the county commissioners, by an order therefor duly made, allowed said clerk a deputy for an indefinite period and fixed the salary of such deputy at one thousand dollars per annum, and also by appropriate resolution empowered and directed the respondent auditor to draw his warrant upon the treasurer of said county on the first Monday of each month thereafter for the salary due said deputy for the preceding month; and that from the date of such appointment until the beginning of this action such course had been followed, etc. Other matters set out in the complaint are unnecessary to a proper understanding of the questions here presented.

For a reversal of the judgment, appellant relies upon

the following points: (1) That the provisions of the act of March 26, 1890 ( Laws 1889–90, p. 304, § 2), authorizing county commissioners to allow county officers deputies, and to fix their compensation, are invalid as an attempt upon the part of the legislature to delegate the exercise of powers exclusively legislative; (2) that the effect of the order is to increase the salary of the county clerk during his term of office; (3) that the effect of the provision of the act authorizing the commissioners to fix the salaries of deputies is to destroy the uniformity of the operation of the law; and (4) that the court erred in permitting the county clerk to intervene in the suit.

Sec. 5, art. 11 of the constitution provides:

" The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their terms of office. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population."

Sec. 8 of the same article further provides :

.   .   .   " The salary of any county  .ʼ  .   .   or municipal officer shall not be increased or diminished after his election, or during his term of office."

Sec. 29, art. 1, is as follows:

" The provisions of this constitution are mandatory, unless by express words they are declared to be otherwise."

At the first legislative session subsequent to the adoption of the constitution of this state an act was passed for the evident purpose of carrying into effect the mandatory provisions of section five, article eleven,

of the constitution, above quoted. The act begins with the statement ( § 1, act of March 26, 1890, Laws, p. 304,) that, "for the purpose of regulating the compensation of county officers herein provided for, the several counties of this state are hereby classified according to their population," etc. The act then proceeds to classify counties accordingly, to provide for the election of officers, and to fix their term of office and compensation. The provisions of that act which are directly assailed by the appellant herein as being in conflict with § 5, *supra*, and an unwarranted delegation of exclusive legislative power, are found in §§ 2 and 32. Sec. 2 is as follows:

"And in all cases where the duties of any office are greater than can be performed by the person elected to fill the same, said officer may employ, with the consent of the county commissioners, the necessary help, who shall receive a just and reasonable pay for services. The officer appointing such deputies or clerks shall be responsible for the acts of such appointees upon his official bond."

The authority conferred by this section is sufficient to entitle the respondent to prevail herein if the legislation itself is not unconstitutional, hence we will not construe § 32 (Laws 1889-90, p. 312,) of the act.

It is a general rule that before the judiciary will declare an act of the legislature invalid on the ground that it is in conflict with the constitution, such conflict must be shown to be clear and unquestionable, and every intendment must be given force in favor of the constitutionality of the law. But appellant contends that § 5, art. 11, of the constitution above quoted, is a restriction and limitation upon the power of the legislature to entrust the employment of clerks, deputies or assistants to the county officers to the board of com-

missioners; and that by the provisions of said § 5 it was the duty of the legislature in fixing the compensation allowed county officers for their services to so regulate the same that the sum so fixed by the legislature should be inclusive of all services performed by such officers, their deputies, clerks or assistants. And he further contends that, by section two above set out, an attempt is made to delegate to the board of commissioners the authority to change the law fixing the salaries of county officers whenever it shall appear to said board that the salaries fixed are inadequate for the services required of such officers. Hence it becomes necessary to construe § 5 of the constitution in order to determine its effect upon the legislation in question.

Art. 11, § 5, of the constitution of California, provides:

"The legislature, by general and uniform laws, shall provide for the election or appointment in the several counties, of boards of supervisors, sheriffs, county clerks. . . . It shall regulate the compensation of all such officers in proportion to the duties, and for this purpose may classify the counties by population."

An act of the legislature of that state provided for the classification of counties, and fixed the compensation of a given officer in a lump sum, out of which it expressly required him to pay for the services of all deputies and assistants—his own compensation virtually consisting of the residue remaining after such deputies and assistants were paid. At a subsequent session an amendment was passed providing that:

"Whenever, in the opinion of the board of supervisors, the salary of any county officer" (in certain classes of counties) "as fixed and provided in this act is insufficient to pay a reasonable compensation for the services required to be performed, then said board shall allow such officer a deputy, or such number of

deputies as in their judgment may be required to do the business of said office in connection with the principal, at a salary not to exceed one hundred dollars per month."

And this amendment was by a divided court, in the case of *Dougherty v. Austin,* 94 Cal. 601 (28 Pac. 834) declared to be unconstitutional and void as an attempt by the legislature to delegate to the board of supervisors the duty imposed on it, by the section of their constitution already quoted, of regulating the compensation of all county officers in proportion to their duties. The act was also held to be void as being in conflict with § 9, art. 11, of the constitution of that state, wherein it is provided that, " The compensation of any county  .  .  .  or municipal officer, shall not be increased after his election or during his term of office." It was further held to be obnoxious to the provisions of their constitution requiring all laws of a general nature to be uniform in their operation, for the reason that the authority attempted to be conferred upon the boards of supervisors by said act was limited to certain classes of counties. As regards this latter point, the case cannot be considered as authority upon the question which we are now considering.

This case of *Dougherty v. Austin, supra,* is the only case to which we have been referred by counsel, or which we have been able to discover, which seems to have a direct bearing upon the present controversy; and after giving it a very careful consideration, although entertaining for the ability and learning of that court the highest regard, we are nevertheless unable to adopt either the reasoning of the majority or the conclusion reached by them in the settlement of this question.

It seems to us that the determination of this ques-

tion lies within a very narrow compass. The question is, what is meant by the term "officer" as used in the section of the constitution under consideration? And it seems to us that the answer is suggested by a consideration of the section, and what it calls upon the legislature to do. It requires the legislature to provide, first, by general and uniform laws for the election of county officers (not deputies or assistants); second, to prescribe their duties; third, to fix their terms of office; and, lastly, to regulate the compensation of "such officers." The whole scope of the provision relates to the "officer," and to him alone. It is for *his* election that provision is to be made by the legislature; it is *his* term of office that is to be fixed, and it is equally true that it is only *his* compensation that the legislature is required to regulate; and if we are right in this construction then it necessarily follows that as to needful deputies and assistants the section imposes no legislative restrictions or limitations, and the legislature is left in precisely the same condition, and with the same power and authority as concerns the subject of this litigation, viz., the deputy county clerk of Clallam county, that it would have been in had § 5, of art. 11, never been incorporated in the constitution.

By thus construing it, we give to the term "officer" its common, ordinary and accepted meaning—a meaning which permits this legislative enactment to stand; and we do not consider that there is either reason or necessity for straining it from its usual to a restricted sense, when the "result of such construction is to upset a statute." The view which the learned majority of the California court has taken of the subject in the case of *Dougherty v. Austin* seems to deny the existence of any distinction between the "officer" and the

deputy, and the term "officer" seems to have been rendered so as to include deputies and all needful assistants.    Doubtless many instances might arise requiring such construction, but as we can only adopt it at the expense of declaring a solemn act of the legislature void, thereby causing confusion and great public inconvenience throughout the state, we are constrained to reject it.

A deputy county clerk is not a county officer. *Jeffries v. Harrington,* 11 Colo. 191 (17 Pac. 505); *Warwick v. State,* 25 Ohio St. 24.

"The 'officer' is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or non-feasance in office, and usually, though not necessarily, in the tenure of his position." *Throop v. Langdon,* 40 Mich. 673, (per COOLEY, J.).

This view of the subject appears to have been overlooked by the learned court in the California case, or else to have been regarded as unworthy of consideration, but to our minds it is of controlling importance.    The whole scope of the constitutional provision relates to the "officer," and not necessarily to mere clerks and deputies.    True, the constitution provides that the legislature shall regulate the compensation of such officers in proportion to their duties, etc., but we cannot see that this required the legislature to fix a lump sum from which he would be required to pay all deputies and needful assistants, which was the course of legislation first pursued in California.    "In proportion to their duties" might well mean that in regulating the compensation as between the different officers of the county regard should be had to the differ-

ence in the character of services required of them.
For instance, the duties devolving upon a prosecuting
attorney of a county are very dissimilar to those of the
county coroner or assessor, hence in a relative sense
the legislature is by this provision required to regu-
late the compensation of the officers in proportion to
their duties, and this, we think, is all that is meant by
that portion of the section under consideration. At
least it ought not to receive a narrow construction
when a legislative enactment is imperiled thereby. To
give to these words the restricted meaning and to
render them in a narrow sense is not required by any
rule of construction with which we are familiar,
Hence it follows that the limitations imposed upon the
legislative authority by the provisions of § 5, art. 11.
relate only to the officers of the county, *i. e.*, to the
persons elected to fill the office as distinguished from
mere clerks, or deputies, and that as to clerks or others
whose services may be requisite or necessary to the
discharge of the business of a particular office, the sub-
ject is left, so far as the constitution is concerned, to
the wisdom of the legislature untrammeled and unfet-
tered by any restrictions or limitations. Such being
the case, had the legislature the power to confer upon
the county boards the authority to employ assistants
of the county officers at the expense of their respective
counties ?

It is very generally laid down by law writers that
the power to make laws cannot be delegated by the
body in which that power is reposed.

" Where the sovereign power of the state has located
the authority, there it must remain; and by the con-
stitutional agency alone the laws must be made until
the constitution itself is changed." Cooley, Const.
Lim. (5th ed.), p. 139.

But, says that eminent jurist —

" This maxim that legislative power must not be delegated . . . is to be understood in the light of the immemorial practice of this country and of England which has always recognized the propriety and policy of vesting in municipal organizations certain powers of local regulation, in respect to which the parties immediately interested may fairly be supposed. to be more competent to judge of their needs than any central authority."

And courts do not regard this practice as obnoxious to the constitutional principle that the power conferred upon the legislature to make laws cannot be delegated to any other body or authority; and we think the subject matter of the proviso contained in § 2 of the act of 1890 above set out falls within the exception in favor of local regulation, and as such is not a delegation of legislative power. The authority conferred and the duty imposed by this section are not legislative, but administrative, and we think it a very general and proper legislative practice to delegate to commissioners, and other municipal officers, the power to do many administrative acts which the legislature might undoubtedly do itself. It rests upon the convenience of such arrangement, and obviates the difficulties in the way of making direct, suitable legislative provision. Indeed, appellant concedes the legislative authority to pass the act, unless it is cut off by said § 5 of the constitution.

The second proposition does not require such extended consideration. We do not think that the effect of the order of the board of commissioners in question was to increase the salary of the county clerk of Clallam county. It is clear that the legislature of this state, in fixing the compensation of the several county officers, intended the sums so fixed as compensation to the officers only, and this, as we have seen, is all that the

constitutional provision, mandatory though it be, required the legislature to do. This court will take notice of the fact that in many counties of the state the volume of public business pertaining to certain offices is so great as to necessitate the employment of assistants, the cost of which necessarily greatly exceeds the amount fixed by the legislature as salary of the officer. Our whole legislative policy, since the adoption of the constitution, in regard to this subject has been to allow the commissioners of the several counties to make provision for this assistance at the charge of the respective counties. To avoid any possible doubt as to the legislative meaning, § 2 of the act of March 26, 1890, above quoted, was adopted. A directly opposite course of legislation was pursued in California. Instead of fixing the compensation of the officer, and making separate provision for the payment of necessary assistants to him, the legislature of that state, as already noticed, provided for a lump sum, out of which he was required to pay needful assistants. It follows that inasmuch as § 2 of the act of 1890 was in force and effect at the time the intervenor was elected and inducted into office, the constitutional provision prohibiting the increasing of salary during the term of office was in no wise violated by the order of the commissioners allowing the intervenor a deputy at the charge of Clallam county.

The third proposition contended for, viz., that the effect of the act is to destroy the uniformity of the operation of the law, does not impress us with any force. The case of *Dougherty v. Austin,* for the reasons already pointed out, is not in point upon this proposition. Ours is a general provision of law, applicable to all classes of counties, the exercise of the power or duty imposed upon the commissioners depending upon the

condition of the public business in a given county; like conditions insuring like results.

As to the final contention of counsel, that the court erred in permitting the county clerk to intervene in the action, without stopping to consider the question of the regularity of the proceeding, it is sufficient to say that permitting him to do so in this case did not operàte to the prejudice of the appellant in any way.

The judgment appealed from will be affirmed.

HOYT, C. J., and ANDERS, J., concur.