[No. 26299. *En Banc.* August 1, 1936.]

THE STATE OF WASHINGTON, *on the Relation of C. E. McIntosh, Plaintiff,* v. E. N. HUTCHINSON, *as Secretary of State, Respondent.*[1]

[1]Reported in 59 P. (2d) 1117.

*Thomas Stiger, Jr.,* for relator.

*The Attorney General* and *W. A. Toner, Assistant* (*Cheney & Hutcheson,* of counsel), for respondent.

TOLMAN, J.—Relator, by this action, seeks to compel the respondent, as secretary of state, to accept and file his declaration of candidacy for the office of state senator for the thirty-eighth district.

In his petition, the relator sets forth that Honorable L. E. Tewksbury, the incumbent for the term ending the second Monday in January, 1939, has accepted the position of district administrator of the Works Progress Administration, in which position he is the representative of the Federal government, and that, under the terms of Art. II, § 14, of our state constitution, the acceptance of the Federal position has created a vacancy in the office of senator which Tewksbury held.

The respondent has moved to quash, has demurred to the petition, and has also answered on the merits. The questions of law presented by the admitted facts which thus appear are decisive of this case.

On July 8, 1935, during the senatorial term for which he had been elected and for which presumably he had qualified, Tewksbury was, by George H. Gannon, the state director of the Works Progress Administration, appointed or employed as supervisor, director or manager of District Number Three of the Works Progress Administration within this state, in which position he served until May 14, 1936, when his services ended and he ceased to have any connection with the W. P. A.

Mr. Gannon acted, it appears, only under the authority of what is known as the Federal emergency relief act of 1935.

Our constitutional provision, Art. II, § 14, so far as is here material, reads:

" . . . and if any person after his election as a member of the legislature shall be elected to congress or be appointed to any other office, civil or military, under the government of the United States, or any other power, his acceptance thereof shall vacate his seat: Provided, that officers in the militia of the state who receive no annual salary, local officers, and postmasters, whose compensation does not exceed three hundred dollars per annum, shall not be ineligible."

Section 13 of the same article, so far as civil office is concerned, applies the same language to a state civil office created during the term of a legislator.

Our first inquiry must be, what is a civil office within the meaning of the constitutional provisions referred to? An employee or a deputy is not an officer. *Nelson v. Troy,* 11 Wash. 435, 39 Pac. 974; *State ex rel. Allen v. Spokane,* 150 Wash. 542, 273 Pac. 748; 277 Pac. 999. Commissioners appointed to assess benefits are not officers. *Bilger v. State,* 63 Wash. 457, 116 Pac. 19. School teachers are not public officers. *State ex rel. Board of Directors, S. D. No. 306 v. Preston,* 120 Wash. 569, 208 Pac. 47. In each of these cases there is some discussion indicating the distinction between an officer and an employee, all of which is in harmony with what we shall here say.

A leading case on the subject is that of *State ex rel. Barney v. Hawkins,* 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583. Most of the authorities bearing upon the subject are there cited and analyzed and the Montana court said:

"After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it a public office of a civil nature: (1) It must be created by the Constitution or by the legislature or

created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred and the duties to be discharged must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity and not be only temporary or occasional. In addition, in this state, an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by proper authority.''

The Federal legislation, under which Mr. Gannon acted in appointing Mr. Tewksbury, creates no district or divisional office for the administration of the W. P. A. The division of this state into districts, if that has been done, was a mere matter of convenience, not required or made mandatory by the law. Hence, there was no office of manager of district numbered three of the state of Washington for the administration of the W. P. A. ever created and Tewksbury became no more than an employee under Gannon.

As to the second requirement, that there must be a delegation of some part of the sovereign power of government, we find nothing in this record, or of which we are required to take judicial notice, indicating that any such power was ever conferred upon or possessed by Tewksbury.

What has already been said indicates that the third condition was not fulfilled because no powers were conferred, hence none could be defined. The fourth condition was not met because Tewksbury had no duties

to perform independently and without the control of his superior; and, as to the fifth condition, there is nothing indicating any permanency or continuity of the position in question.

Since the great weight of authority well supports the necessity of meeting all of the conditions laid down by the Montana court, and since it is not made to appear that these conditions, or any of them, have been here met, we are obliged to hold that Mr. Tewksbury was not appointed to a civil or military office under the government of the United States, or any other power; that his acceptance of employment under the W. P. A. was not the acceptance of a civil office, and that nothing appears which casts doubt upon his title to the office of state senator for the thirty-eighth senatorial district.

The writ of mandate is denied.

ALL CONCUR.

[1]Reported in 59 P. (2d) 1109.