**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 17, 2024

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 17, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE U.S. SPORTSMEN'S ALLIANCE FOUNDATION, MARC NELSON, and KOLBY SCHAFER, | ) ) ) ) | No. 102358-8 |
| Respondents, | ) ) | |
| v. | ) ) | En Banc |
| LORNA SMITH, | ) ) | |
| Appellant. | ) ) ) | Filed: October 17, 2024 |

JOHNSON, J.—This case concerns the interpretation of RCW 77.04.040's dual office prohibition and asks us to determine whether a position on the Jefferson County Planning Commission is an "office" under the statute.

Appellant Lorna Smith (Commissioner Smith), an appointed member of the Washington Fish and Wildlife (WFW) Commission, simultaneously held an appointed position on the Jefferson County Planning Commission and the WFW Commission. Plaintiff-Appellees (Plaintiffs)—U.S. Sportsmen's Alliance

Foundation (SAF), Marc Nelson, and Kolby Schafer[1]—filed this action against Commissioner Smith, alleging RCW 77.04.040 prohibits her from holding the offices concurrently.

RCW 77.04.040 states that "[p]ersons eligible for appointment as members of the [WFW] commission . . . shall not hold another state, county, or municipal elective or appointive office." Commissioner Smith concedes her position on the county planning commission is a county appointive position. She disputes, however, that the position is an "office" subject to the statute's dual office prohibition.

We conclude the Jefferson County Planning Commission is an "office" under RCW 77.04.040 and affirm the trial court.

FACTS AND PROCEDURAL HISTORY

Commissioner Smith was appointed by Governor Jay Inslee to the WFW Commission in January 2021. Her appointment was later confirmed by the state senate. At the time of her appointment, she also served as a volunteer on the Jefferson County Planning Commission, a position appointed by the chair of the board of county commissioners with the approval of a majority of the board.

---

[1] SAF is an Ohio nonprofit organization "that protects and defends America's wildlife conservation programs and the pursuits—hunting, fishing and trapping—that generate the money to pay for them." Clerk's Papers at 1. Nelson and Schafer are Washington residents and members of SAF.

Plaintiffs filed a complaint against Commissioner Smith, alleging her appointive position on the planning commission makes her ineligible to serve as a WFW commissioner under RCW 77.04.040, which prohibits WFW commissioners from holding "'another state, county, or municipal elective or appointive office.'" Clerk's Papers (CP) at 1 (quoting RCW 77.04.040).

Both parties moved for summary judgment on the issue of whether the planning commission is an "office" under RCW 77.04.040's dual office prohibition. Thurston County Superior Court, agreeing with Plaintiffs, held that the "planning commissioner position occupied by Lorna Smith is a county appointive office" under RCW 77.04.040 and is therefore an "incompatible office" under the statute. CP at 74. Accordingly, the trial court granted Plaintiffs' cross motion for summary judgment and denied Commissioner Smith's motion. Pursuant to a stipulation as to the remedy, the trial court ordered that Commissioner Smith resign from her county planning commission position. Commissioner Smith successfully sought direct review of the summary judgment denial. Governor Jay Inslee filed an amicus brief in support of Commissioner Smith.

ANALYSIS

We review de novo summary judgment orders and issues of statutory interpretation. The objective of statutory interpretation is to "'ascertain and carry out the Legislature's intent.'" *State v. Valdiglesias LaValle*, 2 Wn.3d 310, 317-18,

535 P.3d 856 (2023) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). In addition to the text, we look at the context of the statute, related statutory provisions, and the statutory scheme as a whole. When a "statute's meaning is plain on its face, courts will give effect to that meaning as an expression of legislative intent." *Valdiglesias LaValle*, 2 Wn.3d at 318. When a term is undefined in the statute or at common law, we give the term its "'plain and ordinary meaning unless a contrary legislative intent is indicated.'" *Valdiglesias LaValle*, 2 Wn.3d at 318 (internal quotation marks omitted) (quoting *State v. Haggard*, 195 Wn.2d 544, 548, 461 P.3d 1159 (2020)). An undefined term's ordinary meaning is ascertained from a standard dictionary. *Grant County Prosecuting Att'y v. Jasman*, 183 Wn.2d 633, 643, 354 P.3d 846 (2015).

RCW 77.04.040 states that "[p]ersons eligible for appointment as members of the [WFW] commission . . . shall not hold another state, county, or municipal elective or appointive office." The only disputed term—"office"—is not defined in the statute.[2] And the term within the context of this statute has not been defined at common law. Thus, we interpret the term consistent with its ordinary meaning as derived from dictionaries to ascertain legislative intent.

---

[2] Chapter 1.16 RCW provides a rule of construction for the related term "officer," which instructs that "[w]henever any term indicating an officer is used[,] it shall be construed, when required, to mean any person authorized by law to discharge the duties of such officer." RCW 1.16.065. This guidance is not helpful to our analysis.

*Black's Law Dictionary* defines "office" as a "position of duty, trust, or authority, esp[ecially] one conferred by a governmental authority for a public purpose." BLACK'S LAW DICTIONARY 1305 (11th ed. 2019). In *Webster's Third New International Dictionary*, "office" is defined as "a special duty, charge, or position conferred by an exercise of governmental authority and for a public purpose[;] a position of authority to exercise a public function and to receive whatever emoluments may belong to it." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1567 (2002). It is also defined as "a position of responsibility or some degree of executive authority." WEBSTER'S, *supra*.

Together, the plain and ordinary meaning of the term "office" refers to a position of authority, duty, or responsibility conferred by a governmental authority for a public purpose or to exercise a public function.

Commissioner Smith acknowledges the statute's language is unambiguous. Wash. Sup. Ct. oral arg., *U.S. Sportsmen's All. Found. v. Smith*, No. 102358-8 (May 30, 2024), at 1 min., 43 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org ("Frankly, this is not ambiguous language. It should not be viewed as ambiguous language."). And when a statute is unambiguous, "its meaning must be derived from the wording of the statute itself," and a statute that is "clear on its face is not subject to judicial interpretation." *State v. Chapman*, 140 Wn.2d 436, 450, 998 P.2d 282 (2000). Yet Commissioner Smith

maintains that we should decline to interpret "office" according to its ordinary meaning. She instead requests that we look beyond the text of the statute and interpret "office" as requiring more than what is required by the ordinary meaning of the statutory term.

She asserts the term should be construed consistent with how we have defined the related terms "public office" and "civil office" in the constitutional context. *See State ex rel. Hamblen v. Yelle*, 29 Wn.2d 68, 185 P.2d 723 (1947) (defining "civil office" under art. II, § 13 of Washington Constitution); *State ex rel. Brown v. Blew*, 20 Wn.2d 47, 145 P.2d 554 (1944) (defining "public officer" under art. II, § 25); *State ex rel. Johnston v. Melton*, 192 Wash. 379, 73 P.2d 1334 (1937) (defining "public office" under art. XI, § 5); *State ex rel. McIntosh v. Hutchinson*, 187 Wash. 61, 59 P.2d 1117 (1936) (defining "civil office" under art. II, §§ 13, 14). Consistent with those cases, Commissioner Smith argues RCW 77.04.040's "office" should be interpreted as including only positions that independently exercise part of the government's sovereign power.

Specifically, Commissioner Smith proposes we apply the five-part test we adopted in *Brown*, 20 Wn.2d 47, which we applied to interpret a constitutional provision. In *Brown*, we concluded a position of public employment is a "public office" under article II, section 25 when

> "(1) [i]t [is] created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the

legislature; (2) it . . . possess[es] a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred and the duties to be discharged [are] defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties [are] performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office created or authorized by the legislature and by it placed under the general control of a superior officer or body; (5) it [has] some permanency and continuity and [is] not . . . only temporary or occasional. In addition, in this state, an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by proper authority."

20 Wn.2d at 51 (internal quotation marks omitted) (quoting *McIntosh*, 187 Wash. at 63-64). Notably, this test requires that a "public office" possess a portion of the government's sovereign power. We have applied this test only in the constitutional context. But Commissioner Smith requests we apply it to the statutory context in lieu of our traditional rules of statutory interpretation. *See McIntosh*, 187 Wash. 61 (applying *Brown* test to define "civil office" under art. II, §§ 13, 14 of state constitution). We decline.

We have previously "decline[d] to adopt the interpretation of 'public officer' from . . . constitutional cases" when interpreting statutory language. *Jasman*, 183 Wn.2d at 642. In *Jasman*, we were asked to interpret the term "public officer" in RCW 9.92.120. Similar to Commissioner Smith, the *Jasman* petitioner requested we interpret "public officer" consistent with how we interpret the term under article XI, section 5. We declined. We also refused to adopt the definition of

"officer" from *McIntosh*, which applied the five-part *Brown* test that Commissioner Smith advocates we adopt. In declining to apply the definition of "public officer" from constitutional cases, we recognized that "[i]n those cases, we limited our reasoning to the constitutional context." *Jasman*, 183 Wn.2d at 642. We instead defined the statutory term consistent with our rules of statutory interpretation. We do the same and reject Commissioner Smith's atextual interpretation of RCW 77.04.040.

Commissioner Smith does not assert that a constitutional office or provision is at issue. Instead, she argues we should interpret the statutory term "office" consistent with how we interpret related constitutional terms based on the statutory canon of construction noscitur a sociis. Noscitur a sociis—a Latin phrase meaning "it is known by the company it keeps"[3]—is a doctrine that "directs that a word is not read in isolation; rather, the word's meaning is determined by its relationship to other words in the statute." *Green v. Pierce County*, 197 Wn.2d 841, 853, 487 P.3d 499 (2021). RCW 77.04.040's dual office prohibition applies to "elective or appointive office." Commissioner Smith argues that by grouping "appointive" with "elective," the legislature intended the terms to have analogous meanings. Commissioner Smith notes that "elective office" inherently requires a significant

---

[3] THE LAW DICTIONARY, https://thelawdictionary.org/noscitur-a-sociis/ (last visited Oct. 9, 2024).

level of authority and is generally characterized as wielding some part of the government's sovereign power. Therefore, according to Commissioner Smith, it follows that an "appointive office" under RCW 77.04.040 must also be defined as a position endowed with the State's sovereign authority based on its association with the term "elective." And because the related constitutional terms—"civil office" and "public office"—are interpreted to wield sovereign power, we should adopt the definition used in those constitutional contexts and apply it to this statutory context.

Contrary to Commissioner Smith's assertion, the doctrine of noscitur a sociis does not apply. This statutory construction tool applies "'when a *string* of statutory terms raises the implication that the words *grouped in a list* should be given related meaning.'" *Valdiglesias LaValle*, 2 Wn.3d at 321 n.7 (internal quotation marks omitted) (quoting *United States v. Lauderdale County*, 914 F.3d 960, 967 (5th Cir. 2019)). However, we have held that it is "'inapplicable when the statute provides few other analogous terms.'" *Valdiglesias LaValle*, 2 Wn.3d at 321 n.7 (declining to apply the doctrine of noscitur a sociis to "'money or other thing of value'" to interpret the statutory term "other thing of value") (quoting *United States v. Douglas*, 634 F.3d 852, 858 (6th Cir. 2011)). The phrase "elective or appointive office" is not a "string of statutory terms" or a "grouped . . . list" of terms from which meaning can be derived by their association to each other. Therefore, the

doctrine of noscitur a sociis is inapplicable, and we decline to define the term

"office" as a position endowed with the government's sovereign authority based on

the proximity of the terms "appointive" and "elective" in the statute.

We define RCW 77.04.040's "office" to mean a position of authority, duty,

or responsibility conferred by a governmental authority for a public purpose or to

exercise a public function.[4] The statute's dual office ban applies only to a "state,

county, or municipal" "elective or appointive office," and it is undisputed that the

Jefferson County Planning Commission is a county and appointive position. *See,

e.g.*, CP at 18 (showing the Jefferson County Planning Commission is composed of

nine volunteers appointed by the Jefferson County Board of County

Commissioners); RCW 36.70.080. Applying the ordinary meaning of "office," we

hold Commissioner Smith is prohibited from simultaneously serving as a WFW

commissioner and a Jefferson County planning commissioner.

First, the Jefferson County Planning Commission's authority is conferred by

a governmental authority. It was created by the Jefferson County Board of County

Commissioners as authorized by the legislature in the Planning Enabling Act of the

State of Washington, ch. 36.70 RCW. RCW 36.70.040; *see also* RCW 36.70.030.

---

[4] Commissioner Smith and the governor raise several public policy arguments, including citing difficulties in recruiting individuals to serve on a board or commission. Our role in statutory interpretation generally is to decipher the legislature's intent based on the language of the statute. It is the legislature that holds the power to clarify or modify the scope of the statute's restriction. Thus, these public policy concerns are more appropriate for the legislature to address.

And the planning commission's powers and responsibilities are defined by statute and county ordinance. *See generally* ch. 36.70 RCW; Title 18 JEFFERSON COUNTY CODE (JCC); JCC 18.05.050.

Second, the Jefferson County Planning Commission was created for a public purpose. The planning commission's "[a]ppointees represent their constituents and the general public from their district." CP at 18; *see also* RCW 36.70.080 ("[E]ach commissioner district shall be equally represented on the [planning] commission."). And the general purpose of the Jefferson County Unified Development Code—which defines the planning commission's powers and responsibilities—includes "encourag[ing] land use decision-making in accordance with the public interest, protection of private property rights and the public good, and applicable laws of the state of Washington"; "protect[ing] the general public health, safety, and welfare and encourag[ing] orderly economic development"; "provid[ing] for adequate public facilities and services in conjunction with development"; and "promot[ing] general public safety by regulating development of lands containing physical hazards and . . . minimiz[ing] the adverse environmental impacts of development." JCC 18.05.020(2)(a), (b), (e), (f). The planning commission exercises a public function.

Third, the Jefferson County planning commissioner is a position of authority, duty, and responsibility. As part of the planning commission's quasi-

judicial and legislative functions, it is required to make recommendations to the Jefferson County Board of County Commissioners on land use planning matters and, in fulfilling this duty, is required to hold public hearings and to develop findings and conclusions. Specifically, the planning commission is responsible for reviewing and making recommendations on development regulations of the county; "recommend[ing] priorities for and review[ing] studies of geographic subareas in the county"; and reviewing and making recommendations on the "Jefferson County Comprehensive Plan[5] and other planning documents" to ensure the "county's plans, goals, policies, and development regulations . . . promot[e] orderly and coordinated development within the county." JCC 18.05.050(2), (3), (1). The planning commission is required to "make recommendations to the county commissioners on all Comprehensive Plan matters, including amendments to the plan text and land use map, development regulations and subarea plans." JCC 18.45.010(3). The planning commission is also authorized to propose amendments, changes, or modifications to development regulations to the board of county commissioners for adoption. JCC 18.45.090(1)(a); RCW 36.70.550 ("The planning agency may also draft such regulations, programs and legislation as may, in its

---

[5] The Jefferson County Comprehensive Plan, "and all of its goals, objectives, policies, documents, and maps[,] . . . is a generalized coordinated land use policy statement of the Jefferson County board of commissioners, adopted pursuant to Chapter 36.70A RCW." JCC 18.10.030.

judgment, be required to preserve the integrity of the comprehensive plan and assure its systematic execution, and the planning agency may recommend such plans, regulations, programs and legislation to the board for adoption."). And "[a]ll other county boards, committees, and commissions" are required to "coordinate their planning activities, as they relate to land use or the Jefferson County Comprehensive Plan, with the planning commission." JCC 18.05.050(4).

Further, the Jefferson County Planning Commission is authorized, and in some contexts required, to "hold public hearings in the exercise of its duties and responsibilities." JCC 18.05.050(5) ("The planning commission may hold public hearings in the exercise of its duties and responsibilities as it deems necessary."); *see, e.g.*, JCC 18.45.060(3) (stating that "[t]he planning commission *shall* hold a noticed public hearing to accept public comment regarding the suggested amendments" to the Jefferson County Comprehensive Plan (emphasis added)); JCC 18.15.132. And "[f]or all proposed amendments" to the comprehensive plan, the planning commission is required to "develop findings and conclusions and a recommendation which consider the growth management indicators" found in the Jefferson County Code. JCC 18.45.080(1)(b).

Because the Jefferson County planning commissioner is a county appointive position of authority, duty, or responsibility conferred by a governmental authority to exercise a public function, RCW 77.04.040's dual office ban applies.

CONCLUSION

We hold RCW 77.04.040 prohibits Commissioner Smith from simultaneously serving as a WFW commissioner and a Jefferson County planning commissioner. Accordingly, we affirm the trial court.

_____
Johnson, J.

WE CONCUR:

_____          _____
                                    Gordon McCloud, J.

_____          _____
Madsen, J.

_____          _____
Owens, J.

_____          _____
Stephens, J.

14

No. 102358-8

GONZÁLEZ, C.J. (dissenting)—Lorna Smith's volunteer service on the Jefferson County Planning Commission does not disqualify her from serving on the Fish and Wildlife Commission. The majority's conclusion otherwise deprives the people of Jefferson County of a qualified volunteer planning commissioner, undermines our state senate's confirmation vote, and will significantly diminish the pool of candidates available to our governor for future appointments across the state that are already hard to fill. I respectfully dissent.

The people of this state created the Game Department by initiative in 1933, and they vested its authority in a director and a commission. LAWS OF 1933, ch. 3 (Initiative 62). To be eligible to serve on the commission, members could not "hold any other elective or appointive office, state, county, or municipal." LAWS OF 1933, ch. 3, § 10. Over the decades, the Game Department evolved into the Department of Fish and Wildlife, and its commission responsibilities have changed. *Compare* LAWS OF 1933, ch. 3, *with* chapter 77.04 RCW. The basic requirement that commission members not hold another state, county, or municipal office has remained. RCW 77.04.040.

Our goal in interpreting statutes, including initiatives, is to carry out the people's intent in enacting the law. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 149 Wn.2d 660, 687, 72 P.3d 151 (2003); *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). The people of this state were acting in their legislative capacity when they created the Game Department. We should conclude that they understood the constitutional context in which they acted. Under that context, limitations on one person's ability to hold multiple offices, or limitations on the benefits a person could reap while in office, arose often enough that I am sure the voting public was well aware of them. *See generally Recent Cases: Public Officers – Eligibility to Office – Incompatible Offices*, 23 HARV. L. REV. 221, 231 (1910) (collecting cases).

These constitutional limitations are part of our society's attempt to protect itself from tyranny and exploitation by separating power into many different hands, limiting the power each hand can hold, and incentivizing those who hold power to keep a careful eye on each other. *See Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 504, 198 P.3d 1021 (2009). There are appropriate times when holding one office disqualifies a person from holding another. *See, e.g.*, U.S. CONST. art. II, § 1 (disqualifying any person "holding an office of trust or profit under the United States" from being appointed a presidential elector); WASH. CONST. art. II,

§ 13 (prohibiting a member of the legislature from being appointed to any office created during their time in the legislature); RCW 77.04.040. Our constitution also prohibits the legislature from raising or lowering the salary of state officers, removing what could have been one branch's powerful tool to encourage compliance or punish independent action in the other branches. *See* WASH. CONST. art. II, § 25.

But "separation of powers 'does not depend on the branches of government being hermetically sealed off from one another.'" *Hale*, 165 Wn.2d at 504 (quoting *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994)). There are profoundly important situations where one person can play different roles in different parts of government. *See In re Disciplinary Proceeding Against Niemi,* 117 Wn.2d 817, 820, 820 P.2d 41 (1991) (holding that separation of powers does not prohibit a state senator from serving as a pro tem judge); *Mistretta v. United States*, 488 U.S. 361, 404, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989) (holding that separation of powers does not bar federal judges from serving on the Sentencing Commission).

In a nation where many elected or appointed offices are part time, effectively volunteer, or minimally compensated, many of those who serve must also have

*U.S. Sportsmen's All. Found. v. Smith*, No. 102358-8 (González, C.J., dissenting)

another job.  *See* Legis. Ethics Bd., Advisory Op. 2001 - No. 1, at 2[1] (observing, "The Board has consistently reaffirmed the citizen-legislator concept and the presumption in favor of employment outside the legislature based on the constitutional design of Washington's part-time citizen-legislature"). Constitutional provisions and statutes that prevent one person from holding two offices do not prevent the same person from bona fide employment.  *See id*; *see also* RCW 42.52.120.

By the time the people of Washington enacted Initiative 62, our country had had more than a century of wrestling with whether one sort of government service was incompatible with another.  *See, e.g.*, *State ex rel. Barney v. Hawkins*, 79 Mont. 506, 529, 257 P. 411 (1927) (holding that a state legislator could also work as the auditor of the board of railroad commissioners); *State ex rel. Kendall v. Cole*, 38 Nev. 215, 232-33, 148 P. 551 (1915) (holding that exposition commissioner was not a public office); *Att'y Gen. ex rel. Adams v. McCaughey*, 21 R.I. 341, 348, 43 A. 646 (1899) (holding that commissioners appointed to lay out a state highway did not hold public office); *People ex rel. Carlton v. Middleton*, 28 Cal. 603, 604 (1865) (holding that commissioners appointed to oversee payment on

---

[1]Available at
https://leg.wa.gov/LEB/Opinions/AdvisoryOpinions/Documents/ETHICS2001.01.pdf.

municipal debt were not officers under former article XI, section 7 of the California Constitution).

Also, by the time Initiative 62 was enacted, the Montana Supreme Court had articulated the test we ultimately adopted for determining whether a position was an officer under our state constitution. Under that test,

> five elements are indispensable in any position of public employment, in order to make it a public office of a civil nature: (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional. In addition, in this state, an officer must take and file an official oath, hold a commission or other written authority and give an official bond, if the latter be required by proper authority.

*Barney*, 79 Mont. at 528-29. Eleven years after Initiative 62 was enacted, we adopted that test in *State ex rel. Brown v. Blew*, 20 Wn.2d 47, 51, 145 P.2d 554 (1944) (quoting *Barney*, 79 Mont. at 528-29).

The people were free then, and the legislature is free now, to disqualify volunteer planning commission members from also volunteering to serve as a Fish and Wildlife Commissioner. But nothing in either Initiative 62 then or chapter

77.04 RCW now suggests that the people acting in their legislative capacity or the legislature itself intended to do so. The fact that our state senate, after a full hearing, confirmed Commissioner Smith to the Fish and Wildlife Commission, knowing of her volunteer service on the planning commission, is strong evidence that the legislature perceived no conflict. Senate Gubernatorial Appointment 9108 (2023).

Under the constitutional test, the members of the Jefferson County Planning Commission do not hold a public office. The commission is a purely advisory body with no final decision-making authority. JEFFERSON COUNTY CODE (JCC) 18.45.010, .050(4), .060, .080, .090; JCC 18.22.955; JCC 18.15.132. The commission's powers are sharply limited. Under the county code,

> [t]he duties and responsibilities of the planning commission shall be as follows:
>
> (1) The planning commission shall review the Jefferson County Comprehensive Plan and other planning documents to determine if the county's plans, goals, policies, and development regulations are promoting orderly and coordinated development within the county. The commission shall make recommendations concerning this to the board of commissioners.
>
> (2) The planning commission shall review development regulations of the county and make recommendations regarding them to the board of commissioners.
>
> (3) The planning commission shall recommend priorities for and review studies of geographic subareas in the county.

(4) All other county boards, committees, and commissions shall coordinate their planning activities, as they relate to land use or the Jefferson County Comprehensive Plan, with the planning commission.

(5) The planning commission may hold public hearings in the exercise of its duties and responsibilities as it deems necessary.

(6) The planning commission shall have such other duties and powers as heretofore have been or hereafter may be conferred upon the commission by county ordinances or as directed by resolution of the board of commissioners, the performance of such duties and exercise of such authority to be subject to the limitations expressed in such enactments.

JCC 18.05.050.[2]

Ultimately, the sovereign power of government is "[t]he power to make and enforce laws." BLACK'S LAW DICTIONARY 1685 (12th ed. 2024). The power to advise about good policy is not the power to make law. The Jefferson County Planning Commission does not "possess a delegation of a portion of the sovereign

---

[2] By contrast, the Fish and Wildlife Commission has considerable power. Among other things,

> (2) The commission shall establish hunting, trapping, and fishing seasons and prescribe the time, place, manner, and methods that may be used to harvest or enjoy game fish and wildlife.
> (3) The commission shall establish provisions regulating food fish and shellfish as provided in RCW 77.12.047.
> (4) The commission shall have final approval authority for tribal, interstate, international, and any other department agreements relating to fish and wildlife.
> (5) The commission shall adopt rules to implement the state's fish and wildlife laws.
> (6) The commission shall have final approval authority for the department's budget proposals.

RCW 77.04.055.

*U.S. Sportsmen's All. Found. v. Smith*, No. 102358-8 (González, C.J., dissenting)

power of government" as contemplated in *Barney* and *Brown. Barney*, 79 Mont. at

528; *Brown*, 20 Wn.2d at 51.

I thus respectfully disagree that we should adopt the harmful and expansive

definition of "office" the majority proposes today: "a position of authority, duty, or

responsibility conferred by a governmental authority for a public purpose or to

exercise a public function."  Majority at 5. To do so is reckless. Under that

definition, almost any public employment or volunteer work would be an office.

Neither the voters in 1933 nor the legislature in the years since then intended such

an expansive approach.  It is inconsistent with the senate's confirmation of

Commissioner Smith, the contemporaneous understanding of a disqualifying

office, and a long line of decisions of the Legislative Ethics Board.  *See* Legis.

Ethics Bd., Complaint 2000 - No. 4[3] (permissible for a legislator to work for a

county), Complaint 2000 - No. 05[4] (permissible for a legislator to work for a city),

Advisory Opinion 1995 - No. 1 app. at 10[5] (adopting House Board of Legislative

Ethics Advisory Opinion 1983 - No. 8 (permissible for a legislator to also do work

for the Washington State Marine Employees Commission)).

---

[3] Available at
https://leg.wa.gov/LEB/Opinions/ComplaintOpinions/Documents/ETHICSCOM2000.04.pdf.
[4] Available at
https://leg.wa.gov/LEB/Opinions/ComplaintOpinions/Documents/ETHICSCOM2000.05.pdf.
[5] Available at
https://leg.wa.gov/LEB/Opinions/AdvisoryOpinions/Documents/ETHICS1995.01.pdf.

It is also inconsistent with our most recent examination of an analogous disqualification—the disqualification imposed by RCW 9.92.120. Under this statute, "[t]he conviction of a public officer of any felony or malfeasance in office shall entail, in addition to such other penalty as may be imposed, the forfeiture of his or her office, and shall disqualify him or her from ever afterward holding any public office in this state." RCW 9.92.120. After Grant County Coroner Jasman was convicted of disorderly conduct, his successor in office hired Jasman as the chief deputy coroner and chief investigator. *Grant County Prosecuting Att'y v. Jasman*, 183 Wn.2d 633, 637, 354 P.3d 846 (2015). Under Washington law, deputies have the same powers as their principals. *Id.* We held that Jasman was disqualified from the deputy position under RCW 9.92.120 and from the chief investigator position to the extent it was functioning as a coroner. *Id.* at 643-44. Critically, Jasman's disqualification was limited to positions where he discharged the duty of the county coroner—in effect, where he exercised the sovereign power of the State. *See id.* at 644. We stressed he was not otherwise disqualified from working at the coroner's office. *Id.*

I recognize that in *Jasman*, we declined to look to the constitutional line of cases interpreting "office." *Id.* at 642 (citing *Nelson v. Troy*, 11 Wash. 435, 39 P. 974 (1895); *State ex rel. McIntosh v. Hutchinson*, 187 Wash. 61, 59 P.2d 1117 (1936)). But that was in the context of determining whether the legislature

9

intended to disqualify a person who committed a felony while in office from holding public office while simultaneously allowing them to discharge the duties of that office.  Analyzing the constitutional line of cases interpreting "office" was not necessary to resolve that case.

"A strong public policy exists in favor of eligibility for public office, and the constitution, where the language and context allows, should be construed so as to preserve this eligibility."  *State ex rel. O'Connell v. Dubuque*, 68 Wn.2d 553, 566, 413 P.2d 972 (1966) (citing *State ex rel. Weston v. Schragg*, 158 Wash. 74, 291 P. 321 (1930)). We should be extraordinarily cautious in determining a person is not eligible for a public office, be it an elected position or a state commission. The governor has informed us that many people who apply for appointment serve on boards and commissions that under the majority's approach, now may be disqualifying.  Br. of Amicus Curiae Gov. Jay Inslee at 12. The broad holding of the majority will likely have far-reaching and unintended consequences.

Given that the Jefferson County Planning Commission does not exercise sovereign power and given that the senate has confirmed Commissioner Smith to her seat on the Fish and Wildlife Commission, I respectfully dissent.

_____
González, C.J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.